# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM H. WHITEHEAD as power of attorney for LEWIS E. WHITEHEAD, JR.**, | ) ) ) ) | |
| Plaintiffs, | ) ) | **Civil Action Number:** **2:18-cv-01130-AKK** |
| **v.** | ) ) | |
| **BBVA COMPASS BANK, and JAMES C. PUCKETT**, | ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION</u>

Acting in a representative capacity, William Whitehead filed this lawsuit through power of attorney for his father, Lewis Whitehead, Jr., alleging claims under § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78(a) *et seq.,* and negligence, breach of fiduciary duty, suppression, and fraud under Alabama law.  Doc. 1.  The court has for consideration BBVA Compass Bank ("Compass Bank") and James Puckett's Motions to Dismiss, or in the Alternative, Motions for Summary Judgment, docs. 5 and 6, in which they seek dismissal on standing and a purported failure to raise a cognizable claim.  *See* docs. 5 at 7-11; 6 at 7-11.  Basically, Compass Bank and Puckett contend that L. Whitehead purchased the investment at issue in this case through a different

subsidiary arm of BBVA and that they had no involvement in any of the decisions at issue in this case. They maintain that to the extent L. Whitehead has a cause of action, it is against the other entity and the individual broker he dealt with for this investment. The motions, which are fully briefed, docs. 5 – 9, and ripe for review, are due to be granted.

## I. STANDARD OF REVIEW

In light of both parties submitting evidence and affidavits in support of and opposition to the Defendants motions,[1] the court considers this matter pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure. "The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion." *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir.1985). However, once the court looks at matters outside of the pleading, "[t]he district court generally must convert a motion to dismiss into a motion for summary judgment." *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary

---

[1] Plaintiff initially attached 49 pages as an exhibit to his complaint, doc. 1-1; Compass Bank and Puckett each attached 20 pages as evidence in support to their Motions to Dismiss, or in the Alternative, Motions for Summary Judgment, docs. 5-1 and 6-1; Plaintiff subsequently attached over 80 pages of evidence in his response, docs. 7 and 8; and Defendants replied with 18 pages of additional evidence, doc. 9.

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally

insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. MOTIONS TO STRIKE AND FOR SANCTIONS

The court turns first to the discovery related motions — the Defendants' motion to strike the affidavit W. Whitehead submitted in opposition to their motions for summary judgment, and W. Whitehead's request for the court to sanction the Defendants for making alleged false statements.

### A. Defendants' Motion to Strike

Defendants move to strike W. Whitehead's affidavit, doc. 8-1, asserting that W. Whitehead "offers opinions on which he has no personal knowledge, and fails to even come close to meeting the standards for admissibility." Doc. 10 at 1-2. An affidavit "must be made on personal knowledge [and] set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). "Affidavits which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike." *Thomas*, 248 F. Supp. 2d at 1112 (citation omitted). "However, if an affidavit contains some improper material, the court need not strike the entire affidavit,

rather it may strike or disregard the improper portions and consider the remainder of the affidavit." *Id.* In that respect, the court will focus only on the sentences in the affidavit that offer conclusory statements and legal conclusions, and lack the "basis for such personal knowledge." *Duke v. Nationstar Mortg., L.L.C.,* 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012). Consequently, the following portions of the affidavit are due to be stricken: (1) Paragraph 2 statement that "Mr. Puckett's affidavit is completely false;" (2) Paragraph 3 statement that "Mr. Puckett's affidavit is attempting to claim that he was vice president of only Compass Bank is false;" (3) Paragraph 6 statement that Puckett's affidavit regarding his involvement in the brokerage account "is an absolute lie;" (4) Paragraph 7 statement that Puckett's affidavit regarding his involvement in securities recommendation "is an absolute lie;" and (5) Paragraph 8 statement that Puckett's affidavit regarding his involvement in recommending the Bank of the West Certificate of Deposit ("CD") "is an absolute lie." Doc. 8-1 at 1-4.

Finally, while Defendants are generally correct that W. Whitehead's statement in Paragraph 9 that he "see[s] absolutely no reason whatsoever that Puckett sold the CD other than to churn commissions," *id.* at 4, constitutes a personal opinion, it is unclear if this statement rises to a "level of conclusoriness below which an affidavit must not sink if it is to provide the basis for a genuine issue of material fact." *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922

F.2d 220, 224 (5th Cir. 1991).  Therefore, although this personal opinion fails to "create an issue of fact sufficient to defeat a motion for summary judgment," *Owens v. City of Fort Lauderdale,* 174 F. Supp. 2d 1298, 1311 (S.D. Fla. 2001), the court declines to strike this statement.  *Cross v. Stafford Hosp., Inc.*, No. CIV.A.7:07-CV-80-HL, 2009 WL 927763, at *3 (M.D. Ga. Mar. 31, 2009) ("[T]o the extent the individual [defendants] proffer their own personal opinion as to [plaintiff], the Court will consider those portions of the affidavits.").

**B. Plaintiff's Request for Sanctions**

The Plaintiff asks the court in his brief to "sanction [the Defendants] for the deliberate and intentional false swearing of [Puckett]." Doc. 7 at 6. The motion is flawed in several respects. First, the Plaintiff has failed to file separately his "sanction motion from its opposition papers," as required by Rule 11(c)(2) of the Federal Rules of Civil Procedure. Second, the Plaintiff has failed to comply with Rule 11(c)(2)'s requirement that the movant provide notice and 21 days to correct the challenged conduct. Fed. R. Civ. P. 11(c)(2). Third, the Plaintiff concedes that he "discovered and has refuted the false statements and perjury of the Defendants before any actual harm has been done by the false statements."  Doc. 7 at 7. Finally, the Plaintiff failed to show that Puckett's affidavit contains false statements that "served no purpose other than to harass and intimidate opposing counsel."  *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1328 (11th Cir.

2002).  For all these reasons, the request for sanctions is rejected.  The court turns

now to the underlying dispute and the motions for summary judgment.

### III. FACTUAL BACKGROUND[2]

In 2012, W. Whitehead and his father, L. Whitehead, met Puckett, who at

the time was a private banker at Compass Bank and vice president of the bank's

wealth management program. Docs. 5-1 at 2; 7-1 at 2.  The following year, Puckett

introduced the Whiteheads to Wes McGugin, an investment officer at BBVA

Compass Investment Solutions ("BCIS"). Doc. 5-1 at 3.  L. Whitehead, with his

son listed as a joint tenant and purchaser, subsequently opened a brokerage account

with McGugin.  *Id.* at 3, 15.  The Whiteheads used this account to execute one

investment in particular that is at issue in this case.

The relevant facts began on April 10, 2015, when McGugin had a

conversation with the Whiteheads about investing $450,000 into a structured CD

through the Bank of the West, during which he explained the risks of failing to

hold the CD to maturity.  Doc. 9-1.  Two weeks later, L. Whitehead invested

$450,000 in the Bank of West CD.  Doc. 5-1 at 16. The following year, McGugin

advised the Whiteheads over the phone that they should sell the Bank of the West

CD based on McGugin's impression "that the basket of stocks underlying the CD

---

[2] "With respect to the pending motions, the Court looks to the agreed facts and other properly
supported factual allegations from the Plaintiffs' point of view." *Michael K. Sheils Tr. dated
Mar. 13, 2003 v. Kuhn,* No. 6:08-CV-1704-ORL-DAB, 2010 WL 11507728, at *2 (M.D. Fla.
June 11, 2010).

were down and [he] did not believe they were going to rebound." Doc. 9-1 at 4. Thereafter, in November 2016, McGugin liquidated at a capital loss of $38,000 the Bank of West CD. Doc. 5-1 at 9, 16. W. Whitehead maintains that McGugin never informed him of the sale, that the Defendants here — Compass Bank and Puckett — intentionally omitted "risks factors" included in published documents about the Bank of the West CD, and that he "see[s] absolutely no reason whatsoever" for the sale "since if they were held to maturity there would be no loss." Docs. 1 at 6; 8-1 at 5. Based on the loss of capital, W. Whitehead, in a representative capacity of his father through power of attorney, filed this lawsuit. Doc. 1.

## IV. ANALYSIS

Compass Bank and Puckett seek summary judgment on two primary grounds: (1) that W. Whitehead lacks standing to prosecute this claim on behalf of his father, and (2) that they had no involvement with the securities at issue. *See* docs. 5 and 6. The court reviews each contention in turn.

### A. Whether W. Whitehead Lacks Standing

Under Article III of the Constitution, a party seeking review by a federal court must demonstrate standing, i.e. "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751 (1984). A party may sufficiently

demonstrate the existence of an injury by showing "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "The granting of a power of attorney is not the equivalent of the assignment of the rights to a claim." *Luria-Akin v. Devonshire at PGA Nat., LLC,* No. 08-80349-CIV, 2008 WL 1745063, at *2 (S.D. Fla. Apr. 11, 2008). "In other words, the person holding a power of attorney does not have the right to sue in [their] own name." *Id.* (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997)); *see also Parris v. Correctional Medical Services*, Civil Action No. 2:10cv225-WHA, 2011 WL 1045223, at *4 (M.D. Ala. Mar. 8, 2011) ("[S]tanding alone, a power of attorney does not enable the grantee to bring suit in his own name [but rather] . . . [a]n action must be prosecuted in the name of the real party in interest.").

The court disagrees with the Defendants' contention that W. Whitehead, as power of attorney for his father, "cannot file or prosecute a lawsuit on behalf of [his father] as a matter of law." Doc. 6 at 9. As one court put it, in rejecting a similar contention, "[t]he cases to which [Defendants] cited held only that a power of attorney is insufficient to give a plaintiff standing to pursue an action in his or her own name, [and] . . . did not arrive at the more expansive holding that a power of attorney is insufficient to give a plaintiff standing to pursue an action on behalf

of someone else." *Loveland ex rel. Loveland v. State Farm Fire & Cas. Co.*, No. 13-20177-CIV-HUCK, 2013 WL 1325365, at *2 (S.D. Fla. Apr. 1, 2013). Framed more appropriately, "[t]his is not a question of standing; rather, this issue involves the question of whether [the representative] has the capacity to bring this action on behalf of the estate." *See also Glickstein v. Sun Bank/Miami, N.A.,* 922 F.2d 666, 670 (11th Cir. 1991). Indeed, "[i]f the grantee of the power of attorney is not suing in her own name but is suing in the name of the injured party, then the real party in interest is the injured party, not the grantee of the power of attorney." *Luria-Akin,* 2008 WL 1745063, at *2. Thus, W. Whitehead, as power of attorney, must bring this suit in the name of his father, i.e. the party with a personal interest in the outcome of the action,[3] which is precisely what he did here albeit, with convoluted language. *See, e.g.,* doc. 1 at 1 ("The Plaintiff, William H. Whitehead, is a resident of Alabama who was appointed as power of attorney by and for his after, Lewis Whitehead, and appears as Plaintiff in this case representing Lewis as his power of attorney.").

It is undisputed that L. Whitehead, in whose behalf W. Whitehead filed this lawsuit, has standing under federal securities laws to pursue this action as the purchaser of the securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ("Private damage action under SEC rule 10b–5 is limited to actual

---

[3] *See* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest").

'purchasers' or 'sellers' of securities, as those terms are defined by the Securities Exchange Act of 1934.").  Moreover, the "capacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b). "Under Alabama law, an appointed attorney-in-fact has the capacity to bring legal action on behalf of the donor if authorized by the power of attorney." *Grace ex rel. Grace v. Palm Harbor Homes, Inc.*, 401 F. Supp. 2d 1230, 1233 (N.D. Ala. 2005) (citing *Miller v. Jackson Hospital and Clinic*, 776 So. 2d 122, 125 (Ala. 2000)). Therefore, W. Whitehead "has capacity to bring this lawsuit on [his father's] behalf because that right is included implicitly in the general grant to act on [L. Whitehead's] behalf." *Id.; see* doc. 1 at 1.

### B. Whether Compass Bank and Puckett are Improper Defendants

The court turns next to Compass Bank and Puckett's alternate contention that they are not the proper defendants. As they put it, because they had "no involvement with or connection with the recommendation, purchase, or sale of the Bank of West CD at issue," they are not liable for the alleged violations pleaded in the complaint. Docs. 5 at 7; 6 at 7.  W. Whitehead disagrees, contending that Puckett claimed to be "exclusively in charge of his father's securities accounts which [L. Whitehead] was in the process of changing over to Compass Bank," and that Puckett visited the Whiteheads in person to discuss structured CDs similar to

the Bank of the West CD that his dad ultimately purchased.[4]  Doc. 8-1 at 2. However, email records between 2012 and 2016 contradict W. Whitehead's contention that that Puckett "was the only manager of the joint brokerage account." Doc. 8-1 at 4.  Instead, they indicate that Puckett helped managed L. Whitehead's account at Compass Bank rather than the security account at issue. This included transferring L. Whitehead's accounts from Wells Fargo and Regions Bank, as well as periodic recommendations on certain CDs for L. Whitehead to purchase.  *See, e.g.* (July 16, 2013 email from Puckett to W. Whitehead discussing the benefits of the Barclay's Bank structured CD, doc. 7-1 at 3-7; September 19, 2013 letter from Puckett to Whitehead explaining the JP Morgan Contingent Linked CD, *id.* at 13-15; October 14, 2014 email from Puckett to W. Whitehead about HSBC and Barclays CDs, doc. 8-3 at 2; and August 29, 2016 email from Puckett to W. Whitehead discussing Goldman Momentum Builder CD, doc. 8-7 at 2).  As shown below, in light of the undisputed evidence showing that these Defendants had no involvement with the brokerage account and made no representations regarding the investments in question, the Plaintiff's claims fail.

---

[4] The decision to sue Compass Bank and Puckett may also be strategic given that any suit against BCIS and McGugin may be subject to arbitration. Doc. 5-1 at 12 ("Important Arbitration Disclosure" stating, in part, that "all parties to this agreement are giving up the right to sue each other in court, . . . except as provided by the rules of arbitration forum in which a claim is filed").

*1. SEC 10(b) and 10b-5 Claim*

The Plaintiff maintains that Defendants have violated Section 10(b) of the Securities Exchange Act of 1934,[5] and Rule 10b-5, which implements Section 10(b),[6] by omitting risks about the Bank of the West CD and intentionally selling the CD prematurely without the Whiteheads' consent for a commission profit. Doc. 1 at 5 – 15. "To recover damages in a private securities-fraud action under § 10(b) . . . [and] Rule 10b–5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 460–61 (2013). A failure to satisfy *any* of these elements, which is the case here, results in dismissal of the claim. *See Bruschi v. Brown,* 876 F.2d 1526, 1529 (11th Cir. 1989)

---

[5] The Act "provide[s] for the regulation of securities exchanges and of over-the-counter markets operating in interstate and foreign commerce and through the mails, to prevent inequitable and unfair practices on such exchanges and markets, and for other purposes." *Blue Chip Stamps*, 421 U.S. at 728 (internal citation omitted). Section 10(b) provides that it is "unlawful for any person, directly or indirectly, . . . [t]o use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations." 15 U.S.C. § 78j.

[6] Rule 10b–5 provides it is unlawful "[t]o employ any device, scheme, or artifice to defraud" and "[t]o make any untrue statement of a material fact" or to omit "a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *S.E.C. v. Monterosso,* 756 F.3d 1326, 1333 (11th Cir. 2014) (citing 17 C.F.R. § 240.10b–5(b)).

(summary judgment inappropriate on a SEC 10b-5 claim when a plaintiff shows a genuine dispute of material fact exists with respect to any element); *S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012) (summary judgment appropriate if plaintiff fails to meet the "materiality" element).

i. Material Misrepresentation or Omission

Defendants have presented unrebutted evidence that they made no material misrepresentation and that BCIS and McGugin, L. Whitehead's brokerage agent, were responsible for managing and recommending the Bank of the West CD at issue. This evidence includes McGugin's affidavit that he "managed the opening of [L. Whitehead's] BCIS brokerage account." Doc. 10-1 at 2-3. Consistent with McGugin's affidavit, the evidence shows that the Whiteheads signed a retail client profile in which they agreed that McGugin was their representative, that BCIS is a division of BBVA Securities, Inc., and that any BCIS accounts are subject to separate agreements from Compass Bank. Doc. 10-2 at 3. The Whiteheads also signed a BCIS agreement, with McGugin listed as the "registered representative" for Brokered Certificates of Deposits, that stated that the CDs "are not affiliated with, nor are they an obligation of Compass Bank." Doc. 10-3 at 2.

Defendants' unrebutted evidence also includes a BCIS call log from McGugin in which he noted speaking with the Whiteheads about "investing 450,000 into a structured CD" and discussed the "time frame, the basket of stocks,

how the investment is calculated, and what could happen if the CD is not held to maturity." Doc. 10-4. The log also includes an entry that the Whiteheads "understood and selected the Bank of the West income CD." *Id.* Defendants also cite to the affidavit of David Neel, senior vice president of BCIS, who explained that BCIS is a division of BBVA Securities Inc., which is a registered broker dealer and affiliate of Compass Bank and that the Whiteheads' "Bank of the West CD [was never] held in any account at Compass Bank." Doc. 10-5 at 4-5. Finally, Puckett states that he never advised L. Whitehead to specifically purchase or sell the Bank of the West CD. Doc. 5-1 at 2.

In addition to failing to rebut Defendants' evidence that they had no involvement in the investment at issue, the Whiteheads fail to put forth any evidence that Compass Bank or Puckett made any material misrepresentation or omission regarding the Bank of the West CD. It seems the Plaintiff's case rests primarily on W. Whitehead's contention that Puckett "recommended all of the securities that [L. Whitehead] purchased for these accounts." *Id.* at 3-4. In support of this contention, W. Whitehead cites to emails in which Puckett mentions the benefits of structured CDs from Barclay's Bank, JP Morgan Contingent, HSBC, AT&T, and Goldman Momentum Builder. *See* docs. 7-1 at 3-7, 13-15; 8-3 at 2; 8-7 at 2. But, none of these emails mention the Bank of the West CD at issue. Moreover, the only communication from Puckett that mentions Bank of the West

during the relevant period consists of one email in which Puckett forwarded information from McGugin to the Whiteheads. *See* Doc. 7-3 at 1 ("Wes asked me to send you this final term sheet regarding Bank of the West."). The other emails from the relevant period indicate only that Puckett helped Whitehead transfer bank accounts from Wells Fargo and Regions Bank to Compass Bank. *See*. doc. 7-4. In short, there is nothing in the record to substantiate W. Whitehead's contention that Puckett recommended that his dad purchase the Bank of the West CD. While generally courts must construe the evidence in the light most favorable to the non-movant, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis,* 432 F.3d at 1326. *See also Michael K. Sheils,* 2010 WL 11507728, at *2 (stating that viewing evidence in the non-movant's favor "does not extend to conclusory matters or allegations not supported by proper evidence.").

Even if the court were to assume that "Puckett pushed [a similar] type of investment" from other banks, doc. 8-1 at 3, to prevail the Plaintiff must still demonstrate that Puckett made "misrepresentations or omissions[7] that are 'material' [to] give rise to a securities fraud cause of action." *In re Royal Caribbean Cruises Ltd. Sec. Litig.,* No. 1:11-22855-CIV, 2013 WL 3295951, at

---

[7] Plaintiff pleads that Defendants intentionally concealed or omitted the "key risk factors" which Bank of the West published in the Disclosure Statement and Offering Circular. Doc. 1 at 6-7. However, Plaintiff submitted an email Puckett forwarded to him at the request of McGugin that contained the purported "omitted" information about the Bank of the West Disclosure Statements, including the key factors, key risks, and additional risk factors. Doc. 7-3 at 3-11.

*12 (S.D. Fla. Apr. 19, 2013). "In determining whether the . . . statements made were material, the Court must make an objective inquiry [into] the significance of an omitted or misrepresented fact to a reasonable investor." *SEC v. Morgan Keegan & Co., Inc.,* 678 F.3d 1233, 1245 (11th Cir. 2012) (internal quotations omitted). "In other words, a misstatement or omission is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Id.*

The emails from Puckett that W. Whitehead references indicate that a reasonable investor would not "attach importance" to the generalized recommendations for other structured CDs in making a decision to specifically purchase the Bank of the West CD. *SEC v. Merch. Capital, LLC,* 483 F.3d 747, 766 (11th Cir. 2007). Rather, the cited emails from Puckett were specific to the CDs he referenced and contained no broad language about structured CDs in general that a reasonable investor could read as a blanket endorsement of all similar CD investment products. *See, e.g.,* doc. 7-1 at 3 ("I wanted to send a quick email recapping a structured CD [by Barclay's Bank] we discussed that I think will work very well for your dad and you"); *id.* at 15 (describing how "the $115,000 amount is guaranteed as long as the [J.P. Morgan Contingent Linked CD] is held to maturity"); doc. 8-3 at 2 ("I . . . wanted to go ahead and send you some information

on the two CD's [from Barclay's and HSBC] available this month I think you may be interested in"). Put simply, these unrelated statements alone are insufficient to demonstrate a material misrepresentation of fact regarding the purchase of the Bank of the West CD, especially since Puckett made these statements a year before L. Whitehead ultimately decided to purchase the Bank of the West CD at issue.

Finally, even if W. Whitehead is correct that his dad invested in the Bank of the West CD based on statements Puckett made about unrelated CDs, that alone is insufficient to show a material misrepresentation. As courts have held, generalized optimistic statements or puffery are insufficient to rise to a material misrepresentation. *See, e.g., In re Royal Caribbean Cruises,* 2013 WL 3295951, at *12 ("A statement that is vague, generalized, or 'mere corporate puffery' is immaterial because a reasonable investor would not base a decision on such statements."). Indeed, it is axiomatic by now that "[p]laintiffs must look beyond these optimistic characterizations to the specific, verifiable statements made by Defendants if they are to successfully allege a violation of the federal securities laws." *Waterford Township Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp*., 2010 WL 1332574, *8 (S.D. Fla. 2010). *See also Next Century Commc'ns Corp. v. Ellis,* 318 F.3d 1023, 1027–28 (11th Cir. 2003) (holding that the statement, "as our Company's strong performance continues," to be non-actionable puffery that fails to induce reliance); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP*

*Morgan Chase Co.,* 553 F.3d 187, 206 (2d Cir. 2009) (noting that defendant's statements regarding its "highly disciplined" risk management were puffery and "too general to cause a reasonable investor to rely upon them"); *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 372 (5th Cir. 2004) ("generalized, positive statements about the company's competitive strengths, experienced management, and future prospects are not actionable because they are immaterial"); *Raab v. Gen. Physics Corp.,* 4 F.3d 286, 290 (4th Cir. 1993) ("discussion of growth . . . by way of loose predictions" and "the range of rates cited" were deemed "anything but definite" or "specific enough to perpetrate a fraud on the market").

To close, the Plaintiff has failed to demonstrate that either Puckett or Compass Bank had any involvement in the securities at issue or that any of Puckett's statements about unrelated securities are "so obviously important to an investor that reasonable minds cannot differ on the question of materiality." *SEC v. Monterosso,* 786 F. Supp. 2d 1244, 1263 (S.D. Fla. 2011). Therefore, the Plaintiff cannot establish the materiality prong and his claim fails as a result.

### ii. Scienter

The Plaintiff also failed to satisfy the scienter element. Scienter requires a showing of an "intent to deceive, manipulate, or defraud," or "severe recklessness." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).

Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 (11th Cir. 1999). As explained in Section B.1.i., *supra*, L. Whitehead can demonstrate at best that he relied on and accepted Puckett's advice on investments unrelated to the Bank of the West CD. Nothing in the record indicates that Compass Bank and Puckett had an "individualized motive" and were "incentivized" to mislead L. Whitehead to recommend the purchase and sale of the Bank of the West CD. *Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 502 (S.D.N.Y. 2013). To the extent that W. Whitehead asserts that scienter is established through his contention that he "see[s] absolutely no reason whatsoever that Puckett sold [the Bank of the West CD] for a loss since if they were held to maturity there would be no loss," doc. 8-1 at 5, as an initial matter, "allegations that defendants were incentivized . . . to boost its net income or retain investments are too generalized to state a claim for securities fraud." *See Oklahoma,* 951 F. Supp. 2d at 502. Second, W. Whitehead has no proof that Puckett, rather than McGugin of BCIS, made the decisions regarding the CD. Indeed, even viewing the evidence in the light most favorable to

the Plaintiff, there is no indication that BCIS ever placed the Bank of the West CD in L. Whitehead's Compass Bank account, or that Puckett specifically recommended the purchase of this specific CD or had anything to do with the decision to liquidate it before its maturity. Finally, there is nothing in Puckett's prior recommendations for unrelated CDs that is sufficient to rise to negligence, let alone the level necessary to demonstrate scienter.

### iii. Reliance Upon and Connection Between the Misrepresentation and Security Transaction

The Plaintiff has similarly failed to demonstrate a connection between Puckett's statements about unrelated CDs and L. Whitehead's decision to purchase the Bank of West CD a year later or to subsequently sell the CD two years later. "[E]stablish[ing] a genuine issue of material fact as to the reliance element" requires evidence that the Plaintiff "reasonably relied on [Puckett's past] statements, and that because of that reliance," he "engage[d] in the transaction in question." *Ledford v. Peeples,* 657 F.3d 1222, 1249 (11th Cir. 2011). In other words, the Whiteheads must "demonstrate that but for [Puckett and Compass Bank's] statements, [L. Whitehead] would not have" purchased and subsequently prematurely sold the CD. *Id.* The Whiteheads have failed to direct the court to any evidence in which Compass Bank and Puckett made recommendations regarding the Bank of the West CD and have similarly failed to rebut the BCIS account statements and McGugin's affidavit that BCIS had sole responsibility for

these transactions.  As such, the Plaintiff has also failed to establish this prong of the analysis.

### iv. Loss Causation

Lastly, to prove loss causation, a plaintiff must show "that the untruth was in some reasonably direct, or proximate, way responsible for his loss." *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds,* 459 U.S. 375 (1983). "It is insufficient to show that Defendants induced the Plaintiffs into deals that subsequently went bad." *Michael K. Sheils,* 2010 WL 11507728, at *7.  And, "[i]f the investment decision is induced by misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997). Here, notably absent from the record is any showing of loss causation within the specific requirements of the federal securities laws or that fraud was the proximate cause for the losses.  Moreover, the Whiteheads' contention that the Defendants' "misrepresentations and omissions caused them to invest . . . and the falsity of those caused at least some substantial portion of [their] losses" is a "broad conclusion unsupported by specific facts" and "insufficient to create a jury issue as to loss causation." *Michael K. Sheils,* 2010 WL 11507728, at *8.  Put simply, the Whiteheads have also failed to make this showing.

For all these reasons, in particular, the failure to establish any of the required elements for these claims, the Section 10(b) and Rule 10b-5 claims fail.

### 2. Common Law Claims

Plaintiff also pleads negligence, breach of fiduciary duties, suppression, and fraud claims under Alabama Law. "[T]he Supreme Court [has] made clear [that] the securities fraud statutes do not co-opt the existence of separate claims under state fiduciary principles." *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1050 (11th Cir. 1987). Therefore, the state claims, which the court addresses below, rise and fall independently of the federal claims.

### i. Negligence, Breach of Fiduciary Duty, and Suppression Claims

Causes of action for negligence, breach of fiduciary duty, and suppression each include a showing that the defendant owed a duty to the plaintiff.[8] The fundamental flaw here is the absence of any duty owed by Puckett and Compass Bank in the transaction at issue. Again, the record is undisputed that McGugin and

---

[8] *See Alabama Great S. R. Co. v. Raney*, 37 So. 2d 150 (Ala. Ct. App. 1948) (in negligence claims, "plaintiff must show, by appropriate averments, that defendant owed plaintiff a duty, that there was a breach of such duty, and that injury resulted as a proximate consequence of the breach"); *Aliant Bank, a Div. of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 907 (Ala. 2017) ("the elements of a breach-of-fiduciary-duty claim are the existence of a fiduciary duty, a breach of that duty, and damage suffered as a result of that breach"); *Boswell v. Liberty Nat'l Life Ins. Co.*, 643 So. 2d 580 (Ala. 1994) (suppression requires "(1) that the defendant suppressed a material fact, (2) that the defendant had a duty to communicate that material fact, either because of a confidential relationship between the parties, or because of the particular circumstances of the case, and (3) that the plaintiff suffered actual injury as a result of the suppression"). *See also Thompson v. Smith Barney, Harris Upham & Co., Inc.*, 709 F. 2d 1413, 1418 (11th Cir. 1983) ("[T]he law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor.").

BCIS, rather than the two named defendants, oversaw the Whiteheads' joint brokerage account. For example, Puckett, McGugin, and Neel all testify, and the record shows, that in 2013 the Whiteheads opened a separate BCIS joint brokerage account which McGugin managed. *See* docs. 5-1; 9-1; 9-5. Moreover, McGugin is listed as the only "investment officer" when L. Whitehead purchased and sold the Bank of the West CD in April 2015 and in November 2016, respectively. Doc. 8-8. Finally, BCIS records — e.g. the retail client profile and brokered certificate of deposit acknowledgement and disclosure —indicate that the Whiteheads signed agreements acknowledging McGugin as their registered representative in managing the Bank of the West CD. Docs. 9-2; 9-3; and 9-4.

To rebut this evidence, W. Whitehead only maintains that "at no time did I agree to do business with any stockbrokerage firm including BBVA compass investment solutions (BCIS)" and that he does "not recall signing any papers to set up a brokerage account with any brokerage company." Doc. 14-1 at 2, 4. But, failing to recall that one signed a document is not the same thing as saying that one never signed the document. *Torjagbo v. United States,* No. 6:05CV419 ORL28KRS, 2007 WL 1970867, at *5–6 (M.D. Fla. July 3, 2007), *aff'd*, 285 F. App'x 615 (11th Cir. 2008) (a plaintiff's "self-serving denial . . . that he did not execute the Covenant Not to Sue" failed to overcome the "overwhelming evidence" of his signature to raise a "genuine disputed issue of fact"); *Broad.*

*Music, Inc. v. Allis*, 667 F. Supp. 356, 358 n.2 (S.D. Miss. 1986) ("An affiant's failure to remember an event is not a specific denial that the event occurred for purposes of summary judgment."). In fact, the documents at issue contain the Whiteheads' actual signatures rather than e-signatures, and W. Whitehead is not contending that Defendants forged the signatures.

W. Whitehead also contends that he "was not aware that Compass Bank owned a separate investment company" and that he assumed Puckett handled the investments because W. Whitehead "did not want to deal with stockbrokers because [he] knew their charges were in addition to the amount one paid for securities." *Id*. at 2. While W. Whitehead may not have wanted to deal with brokers or knew about BCIS, he and his father signed documents indicating the contrary. Docs. 9-2; 9-3; and 9-4. Ultimately, in the absence of evidentiary support, W. Whitehead's statements alone are insufficient to "create an issue of fact sufficient to defeat a motion for summary judgment." *Owens*, 174 F. Supp. 2d at 1311. Accordingly, the Whiteheads have failed to meet the "burden of proving the existence of a duty owed by the [Defendants]," *DGB, LLC v. Hinds,* 55 So. 3d 218 (Ala. 2010), and the negligence, breach of fiduciary duty, and suppression claims fail as a result. *See Pace,* 283 F.3d at 1276.

### ii. Fraud Claim

"The elements that must be proven in a fraud case are: (1) that there was [an omission] or misrepresentation of a material fact; (2) which was made willfully to deceive or recklessly without knowledge; (3) and upon which the plaintiff justifiably relied under the circumstances; and (4) that the plaintiff suffered damage as a proximate result." *Harris v. M & S Toyota, Inc.,* 575 So. 2d 74 (Ala. 1991). Justifiable reliance "comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. . . If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." *S. States Ford, Inc. v. Proctor*, 541 So. 2d 1081, 1083 (Ala. 1989).

Here, the Whiteheads offer no additional evidence to specifically support the fraud claim. Moreover, "under the facts of this case, [L. Whitehead] would have to have closed his eyes to avoid discovery of the truth. All the documents prepared by [brokerage agent] clearly demonstrated" that McGugin was the representative broker of BCIS and that the Bank of the West CD was held in a BCIS account. *McConico v. Corley, Moncus & Bynum, P.C.*, 567 So. 2d 863, 864 (Ala. 1990). Therefore because, as explained in Section B.1, *supra*, the Whiteheads have failed to establish that the Defendants made an omission or misrepresentation of material

fact regarding the Bank of West CD, induced reliance, and had the requisite intent, the fraud claim also fails.

## V. CONCLUSION

For the reasons explained above, Compass Bank and Puckett's motions for summary judgment, doc. 5 and 6, are due to be granted. To the extent that the Plaintiff has a claim for the Bank of the West CD, it is not against these two defendants.  The court will enter a separate order dismissing this case.

**DONE** the 27th day of March, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE